UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                                  Case No. 1:04-CR-279-01

       Plaintiff,                                                          Hon. Richard Alan Enslen

v.

CHERYL L. ROBERTS,

       Defendant.                                                          **OPINION**
_____/

      This matter is before the Court on Defendant Cheryl L. Roberts' Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and the United States of America's Motion to Dismiss Defendant Cheryl L. Robert's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. The Court has reviewed the briefing and has conducted an evidentiary hearing on a single issue.[1]

**I.     BACKGROUND**

      Defendant was indicted on December 17, 2004, in the Western District of Michigan on a single count of mail fraud, in violation of 18 U.S.C. § 1341. Defendant entered a guilty plea to the Indictment pursuant to a plea agreement on June 13, 2005. On October 14, 2005, Defendant's sentencing hearing was adjourned due to concerns over Defendant's mental and physical health. After a psychiatric and psychological evaluation, Defendant was deemed to be competent. On February 24, 2006, Defendant was sentenced to 48 months custody and a five-year term of supervised release. Defendant filed the present Motion to Vacate on February 28, 2007.

---

[1] An evidentiary hearing is not required when the record conclusively shows that a movant is not entitled to relief. *See Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003).

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner may bring a motion to vacate, set aside or correct her sentence if she believes: (1) it was imposed in violation of the Constitution or a statute; (2) that the court was without jurisdiction to sentence her; (3) that her sentence exceeds the maximum authorized by law; or (4) that her sentence is otherwise subject to collateral attack.  In order to prevail upon a § 2255 motion, the defendant "must allege one of three bases [of error]: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).  Claims of non-constitutional error present an even higher burden:

> To prevail on a 2255 motion alleging non-constitutional error, the [movant] must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

*Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).  This being Defendant's first collateral attack on her Judgment *via* § 2255, her Motion is properly before this Court.  *Cf. In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997).

## III.   ANALYSIS

### A.   Timeliness

The Government argues that Defendant's Motion for post-conviction relief is untimely because her Motion was docketed on February 28, 2007, while her criminal judgment was entered by the Court on February 24, 2006.  Pursuant to § 2255, except in certain circumstances not alleged here, the one-year statute of limitations begins to run on "the date on which judgment of conviction

2

becomes final." 28 U.S.C. § 2255. Generally, a judgment of conviction becomes final upon the conclusion of direct review. *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004) (citing *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002)). The Sixth Circuit has expressly held that when a criminal defendant does not pursue a direct appeal, the date on which judgment becomes final is ten days after the entry of judgment, which is the expiration of the period in which the defendant could have appealed. *Sanchez-Castellano*, 358 F.3d at 427; *see also* FED. R. APP. P. 4(b).

In the present case, the Government has failed to account for this ten-day period. Defendant's ability to pursue a direct appeal expired on March 10, 2006. Defendant filed her § 2255 motion on February 28, 2007, clearly within the one-year limitation. Therefore, Defendant's Motion is timely and the Government's limitation argument fails.

    B.    Ineffective Assistance of Counsel

Defendant claims she suffered ineffective assistance of counsel at the trial level by both of her attorneys.[2] Specifically, Defendant alleges trial counsel Randall Levine was constitutionally deficient for five reasons: (1) counsel failed to pursue an appeal after being instructed to do so; (2) counsel failed to present a vigorous defense; (3) counsel withdrew objections to the Pre-Sentence Report; (4) counsel did not allow her to speak during the sentencing hearing; and (5) counsel failed to pursue a downward departure based on her health problems. Defendant alleges Attorney James S. Brady was constitutionally deficient for four reasons: (1) counsel failed to maintain confidences;

---

[2]The Court notes that it appears Defendant was originally represented by Attorney James S. Brady during the pre-indictment criminal investigation. On January 18, 2005, Defendant requested court-appointed counsel at her arraignment on the Indictment. Attorney Randall Levine was appointed by the Court on January 20, 2005.

(2) counsel failed to present a vigorous defense; (3) counsel failed to provide competent legal advice; and (4) counsel failed to follow directions regarding investigating outstanding loan funds.

In order to prevail on a claim of ineffective assistance, a defendant must show (1) that his counsel made errors so serious that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

The first prong of the test, attorney performance, is judged by "reasonableness under prevailing professional norms." *Id.* at 688. In evaluating this prong, the Court must be "highly deferential" to counsel's performance and avoid being guided by the benefits of hindsight. *Id.* at 689 ("Every effort [must] be made to eliminate the distorting effects of hindsight."). The Supreme Court has recognized that a trial attorney faces a myriad of different decisions. *Engle v. Isaac*, 456 U.S. 107, 133 (1982). When counsel has overlooked or chosen to omit a possible argument, it does not raise a presumption of constitutionally deficient performance. *Id.* at 133–34. "[T]he court [] recognize[s] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Further, the defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Under the second prong of the *Strickland* test, the defendant must show that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

      1.      Attorney Randall Levine

           a.      Failure to File an Appeal as Instructed

Defendant argues that her counsel, Mr. Levine, was deficient in failing to file an appeal after her sentencing. Defendant insists that she instructed Mr. Levine to file an appeal but he failed to do so. She further insists that Mr. Levine "refused" to communicate with her until after the ten day period for appealing her sentence had passed. The Court conducted an evidentiary hearing on this issue on September 17, 2007, where it found that Defendant's testimony was not credible. For the reasons stated at the September 17 hearing, Defendant has failed to persuade the Court that Mr. Levine was ineffective for failing to file a notice of appeal.

           b.      Failure to Pursue a Vigorous Defense, Pursue Defendant's Innocence, and Recoup Missing Funds

Defendant next claims that Mr. Levine was constitutionally ineffective since he did not vigorously pursue her defense because he failed to pursue her innocence, failed to recoup missing funds, and misled her into pleading guilty.[3] Mr. Levine has detailed his exhaustive research and investigation as to Defendant's case in his affidavit. (Levine Aff. at 3–4.) Mr. Levine stated that the defense he pursued included: preventing a superseding indictment on multiple counts of mail fraud; securing concessions by the Government in the Plea Agreement; and providing the Court with extensive information regarding Defendant's health issues to mitigate punishment. (*Id.*) The Court notes that Mr. Levine, through negotiations, was able to secure language in the Plea Agreement

---

[3]The Court finds that Defendant's claim that she was misled or forced into pleading guilty is without merit. The Court questioned her extensively regarding her understanding of the Plea Agreement and her admissions of guilt and, further, she explained in her own words the charge against her. (*See* Plea Tr. 9–12.) Defendant unequivocally stated that her plea was freely given and was the result of nothing but her own free will. (*Id.* at 23–24.)

which guaranteed the Government would not oppose a departure based on Defendant's health issues. (*See* Plea Agree. at 2.)  Mr. Levine also filed successful motions to secure medical and psychiatric evaluations for Defendant and utilized that information to advocate for leniency in his lengthy Sentencing Memorandum and Motion for Downward Departure.  (*See* Dkt. Nos. 40 & 42.)

After a review of the record, the Court finds that Defendant's claims must fail because she cannot establish either prong of the *Strickland* test.  Defendant has not shown that Mr. Levine's defense fell below an objective standard of reasonableness given the evidence against Defendant and Mr. Levine's success in obtaining benefits for Defendant, such as concessions in the Plea Agreement and the prevention of a superseding indictment involving potentially harsher penalties.  The Court finds that Mr. Levine's trial conduct was reasonable under prevailing professional norms.  *See Strickland*, 466 U.S. at 688.  The Court can find no constitutionally deficient performance in Mr. Levine's conduct.  *See Engle*, 456 U.S. at 133–34.  Further, Defendant cannot show that the result of the proceeding would have been any different had Mr. Levine acted differently.  First, there is no indication of any "funds" to recoup because all investigations into Defendant's finances corroborate a loss of approximately two million dollars.  (*See* Brady Aff. at ¶ 8; Levine Aff. at 5.)  There is also no indication that Mr. Levine's belief in Defendant's guilt or innocence affected his legal advice, investigation or counsel.  Thus, Defendant has not shown that had Mr. Levine made different trial decisions, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694.

       c.  Withdrawal of Objections to the Pre-Sentence Report

Defendant contends that Mr. Levine was ineffective because he withdrew objections to the Pre-Sentence Report which, "if sustained would have substantially reduced her sentence."  (Mot. at

5.) This claim must fail. First, Defendant fails to specify what these objections involved or how the objections, if sustained, would have affected her sentence. Mr. Levine declares that the only objections withdrawn were those related to the amount of money involved in the fraud. (Levine Aff. at 4–5.) Mr. Levine states that the objections were withdrawn only after "considerable effort was undertaken to verify the losses" and a realization that the discrepancies were so small that they did not warrant an evidentiary hearing. (*Id.*) Mr. Levine recognized that an evidentiary hearing might aggravate Defendant's sentence and provide "evidentiary support for the imposition of further criminal liability." (*Id.*) As is clear from a review of the Pre-Sentence Report, Mr. Levine endeavored to verify the loss amount and withdrew the objection only after such an investigation.

When counsel has overlooked or chosen to omit a possible argument, it does not give rise to a presumption of constitutionally deficient performance. *Engle*, 456 U.S. at 133–34. Defendant has not shown that Mr. Levine was ineffective by strategically withdrawing his objection to the amount involved in the fraud. The Court finds that this was an exercise of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Defendant has not overcome her burden of proving that this was not sound trial strategy. *Id.* at 689. It is clear from the record that Defendant's records were in shambles and there existed a real probability that an evidentiary hearing on the issue might expose Defendant to more liability.[4] Finally, Defendant fails to prove prejudice because she cannot show that the objection had merit nor that there was a probability that it would have impacted her

---

[4]Such evidentiary hearings expose defendants who testify to the potential loss of a downward departure for acceptance of responsibility. *See, e.g., United States v. Winters*, No. 06-2009, 2007 WL – (6th Cir. Sept. 17, 2007); *see also United States v. Turner*, 324 F.3d 456, 463 (6th Cir. 2003); *United States v. Guthrie*, 144 F.3d 1006, 1012 (6th Cir. 1998). Furthermore, even when a defendant does not testify, such objections run the risk of both wasting court resources and directing more attention to the criminal offense conduct of the defendant.

sentencing. *See id.* at 694. In light of these facts, Defendant has failed to show that Mr. Levine's decision to withdraw the objection fell below an objective standard of reasonableness and, thus, her claim is without merit.

d. Defendant was Silenced During her Sentencing Hearing

Defendant next argues that Mr. Levine was ineffective because he "silenced" her during her sentencing hearing by not allowing her to speak or make certain objections. Federal Rule of Criminal Procedure 32(c)(3)(C) states that before imposing a sentence, a court must "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." Rule 32(c)(3)(C) is the modern form of the common law right of allocution. *See Green v. United States*, 365 U.S. 301, 304 (1961). Under this rule, a defendant has the right to address a sentencing court in an attempt to demonstrate why a lesser penalty is deserved. As the First Circuit noted, allocution "is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." *United States v. De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994). To satisfy Rule 32, a court must "personally and unambiguously invite the defendant to speak in his own behalf." *United States v. Thomas*, 875 F.2d 559, 563 (6th Cir. 1989). It is not enough that defense counsel be given an opportunity to speak for the defendant, this right must be given to the defendant personally. *See Green*, 365 U.S. at 304 (finding that the "most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself").

In the present case, the Court expressly gave Defendant a chance to speak at her sentencing and she did so at length (Sentencing Tr. 14–16). Defendant discussed a multitude of issues before the Court including her remorse, the impact the crime had on her family, and her acceptance of full

8

responsibility for her actions. (*Id.*) Thus, the Court satisfied Rule 32(c)(3)(C). *See Thomas*, 875 F.2d at 563. There is nothing on the record which supports Defendant's claim that Mr. Levine somehow "silenced" her. Accordingly, Defendant's claim that her counsel silenced her and that she could not address certain objections is completely without support.

### e. Failure to Pursue a Downward Departure

Defendant's final argument concerning Mr. Levine asserts that he was constitutionally defective because he failed to pursue a downward departure based on her health problems and psychological stress. The Court finds this claim as patently frivolous. As is clear from Defendant's lengthy Sentencing Memorandum and Motion for Downward Departure prepared by Mr. Levine, this avenue was pursued vigorously. (*See* Dkt. Nos. 40 & 42.) Mr. Levine acted entirely reasonable under prevailing professional norms. *See Strickland*, 466 U.S. at 688. Accordingly, this claim is denied.

## 2. Attorney James Brady

### a. Failure to Maintain Confidences

Defendant asserts her counsel, Mr. Brady, was constitutionally ineffective because he "conveyed his obvious belief in her guilt to her Court appointed attorney [Mr. Levine]." (Mot. at 4.) Defendant has merely asserted her conclusory belief as to Mr. Brady's conduct outside her presence. Both Mr. Brady and Mr. Levine have attested to the fact that this did not occur. (*See* Brady Aff. at ¶¶ 2, 14; Levine Aff. at 1.) Further, even if Mr. Brady divulged his belief that Defendant was guilty to Mr. Levine, Defendant cannot show any prejudice from such an exchange. Mr. Levine was under no obligation to listen to or believe Mr. Brady. Further, Defendant cannot show the alleged exchange impacted her proceedings in any way. Indeed, it is clear from the record

that rather than rush Defendant into a plea agreement, Mr. Levine moved at least once for a continuance of the proceedings to investigate her claims, resulting in her Plea Agreement being entered into some five months after Mr. Levine's appointment. (*See* Dkt. Nos. 15 & 32.) This conduct is not consistent with an attorney who undoubtably believes that his client is guilty.

      Defendant also vaguely claims that Mr. Brady was ineffective because he divulged information to the Government prior to the Indictment, namely her statements under oath at a prior bankruptcy hearing which indicated her guilt. This claim is similarly speculative and without merit. Mr. Brady attests to the fact that Defendant had authorized a meeting with the Government to begin negotiations for a plea agreement and to provide information regarding Defendant's health. (Brady Aff. at ¶ 13.) Mr. Brady states that he was also trying to obtain detailed information from the Government regarding unpaid loans. (*Id.*) The Government corroborates Mr. Brady's statements. (*See* Mot. to Dismiss at 5.) Defendant fails to state any facts which could support her claim. In the Court's view, Mr. Brady exercised reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688. Defendant can show no prejudice where the Government could have easily discovered the prior testimony in the bankruptcy proceeding, and where there is no indication in the Indictment that this information was relied upon or used against her. Therefore, Defendant's claim must fail because it cannot meet the *Strickland* standards and is purely speculative. *See id.* at 694 (holding that to succeed on a claim of ineffective assistance of counsel, the defendant must prove that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different").

      b.  Failure to Present a Vigorous Defense

  Defendant next claims Mr. Brady was constitutionally defective because he failed to set forth a vigorous defense on her behalf. The Court finds this claim to be vague and unsupported by the record. This claim fails to meet the test set forth in *Strickland* as Defendant cannot show Mr. Brady acted in a professionally unreasonable manner or that Defendant suffered any prejudice. *Id.* at 687. Mr. Brady states in his detailed affidavit information concerning his investigation and steps he undertook to provide a defense for Defendant. (*See* Brady Aff. at ¶ 12.) For example, Mr. Brady hired a forensic accountant, David Linden, who determined that Defendant's accounts were overdrawn by almost two million dollars. (*Id.* at ¶¶ 3–8, 12.) Mr. Brady states that he consulted a psychiatrist and other physicians in addition to reviewing documents and Defendant's medical records. (*Id.* at ¶ 12.) Mr. Brady further declares that Defendant repeatedly admitted that the shortage of funds was "likely due to withdrawals for personal use" and also that she had over three million dollars in gambling losses. (*Id.* at ¶¶ 6–7.) These statements were verified through later investigation, and Defendant admitted her personal use of the funds at her plea hearing and described to Officer Trowbridge her gambling debts and habits during an interview. (*See* Plea Tr. 27; PSIR at ¶ 13.)

  The Court finds that Defendant has failed to show that Mr. Brady acted in a professionally unreasonable manner because the record shows Mr. Brady vigorously prepared a defense and commenced an independent investigation of Defendant's case. *See Strickland*, 466 U.S. at 688. Further, Defendant cannot show that the result of the proceedings would have been any different had Mr. Brady changed his conduct, *see id.* at 694, because Mr. Brady represented Defendant prior to the Indictment and because Defendant was represented by different counsel, Mr. Levine, for six

months before entering her Plea Agreement. Therefore, this claim lacks merit and fails to meet the standards set forth in *Strickland*.

### c. Failure to Provide Competent Legal Advice

Defendant alleges that Mr. Brady was constitutionally deficient because he did not provide her with competent legal advice in that he misinformed her that co-mingling of funds was a crime. Again, the Court finds that this claim cannot meet the standards of *Strickland* because Defendant cannot establish prejudice. *See id.* at 694. Assuming, *arguendo*, that Mr. Brady misinformed Defendant as to the legality of "co-mingling," Defendant cannot show any prejudice arising from this advice.[5] Defendant cannot logically blame Mr. Brady's advice for the Indictment filed against her or for the evidence which supported her guilty plea. Moreover, Defendant was only represented by Mr. Brady prior to the filing of the Indictment. Accordingly, Defendant cannot show that Mr. Brady's advice regarding the legality of co-mingling of funds could have reasonably changed the outcome of the proceedings in this Court. *Id.* at 687.

### d. Failure to Follow Directions

Defendant contends that Mr. Brady was constitutionally defective because he failed to follow her directions regarding collecting funds due Defendant on unfunded loans. The Court finds that this claim is again mere speculation and fails to meet the standards set forth in *Strickland*. Defendant alleges there were "disbursed but unfunded Investaid loans" due to her business which, if found, would have: (1) reduced her restitution; (2) "shown that there were [sic] an actual issue of where the funds missing were and therefore [lessened] Defendant's guilt;" (3) lowered her sentence based on

---

[5] The Court notes that Mr. Brady declares he never told Defendant she was guilty of a crime or that co-mingling was illegal; rather, he opined "defendant could be found guilty of a federal offense." (Brady Aff. at ¶¶ 10–12.)

a decreased amount of loss; and (4) demonstrated she did not breach a fiduciary duty. (Mot. at 5.) Mr. Brady has attested that the allegation he failed to pursue a collection of certain funds is untrue. (Brady Aff. at ¶ 16.) Further, Mr. Brady's affidavit details his extensive research into her finances, as well as his referral of her bankruptcy and civil suits to other lawyers. (*Id.* at ¶¶ 8, 12.) The Court notes that Mr. Brady's accountant's findings were corroborated by the Government's evidence and Mr. Levine's later investigations. (*Id.*; Levine Aff. at 5.)

Defendant stated at her plea hearing that she used business funds for personal expenses and she stated to Officer Trowbridge that she gambled extensively with business funds. (Plea Tr. 26.) On twenty occasions during 2004, Defendant's company received loan closing proceed checks on behalf of clients totaling at least $1,900,000. (PSIR at ¶ 9.) The FBI demonstrated a loss amount of $1,942,226. (*Id.* at ¶ 10.) It was never disputed during the proceedings that Investaid had unfunded certain loans nor can Defendant show any funds were due to her company. Indeed, all she has demonstrated is that both of her attorneys completed independent investigations which corroborated the amount of the missing funds and the Government's accusations. (Brady Aff. at ¶ 8; Levine Aff. at 5.) Defendant has, therefore, failed to show Mr. Brady acted in a professionally unreasonable manner so this claim fails.

C. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must also assess whether to grant the issuance of a certificate of appealability to Defendant. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) (holding that § 2253 analysis may be done at the time the claim for relief is determined). Under the statute and the United States Supreme Court's determinations in *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000), and *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983), a certificate shall

issue if the resolution of the petition is debatable among reasonable jurists or adequate to deserve encouragement for some other reason.  Furthermore, the analysis of the sufficiency of the claims must be individually directed to the substance of the constitutional claims asserted.  *Murphy v. Ohio*, 263 F.3d 466, 466–67 (6th Cir. 2001); *Porterfield v. Bell*, 258 F.3d 484, 486 (6th Cir. 2001).

Upon review, the Court finds that reasonable jurists would not find Defendant's positions debatable with respect to the substantive grounds for denying relief as to all issues asserted.  Accordingly, a certificate of appealability will be denied as to all issues.

### IV.   CONCLUSION

For the reasons given, a Final Order shall issue granting Plaintiff's Motion to Dismiss.  The Court will further deny Defendant's Motion under 28 U.S.C. § 2255 with prejudice and deny a certificate of appealability as to all claims.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>September 27, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |